# Imhotep Alkebu-lan

Attorney At Law LLC
Mail: P.O. Box 54863 Atlanta, Georgia 30308
Physical: 235 Peachtree Street NE Suite 400 Atlanta, Georgia 30303
Telephone: 404-855-4646
Telecopier: 404-254-0701
ialkebulan@aol.com
alkebulanlaw.com

*Licensed in:*
*Georgia, Mississippi, New York and Texas (inactive)*

April 30, 2025

Via FedEx Overnight Delivery

Clerk of the Court
11th Circuit Court of Appeals
56 Forsyth Street, N.W.
Atlanta, GA 30303

Re:     In re: Malachi Z. York,
         Misnomer Dwight D. York, Applicant

Dear Clerk of the Court:

I'm enclosing for filing in this cause, the Emergency Motion for Order Authorizing the District Court to consider a Successive Motion Under 28 U.S.C. §2255 Based on Newly Discovered Evidence of Factual Innocence. I'm enclosing the six hundred five-dollar fee as two money orders.

I'm also providing the Respondent, Mistelle J. Starr, Warden, with a copy of the filing by copy of the same.

I greatly appreciate your help. If you have any questions, please let me know.

Sincerely,

Imhotep Alkebu-lan
IA/nut

Enclosure

cc:     Mistelle J. Starr, Warden
         Dr. Malachi Z. York, Misnomer Dwight D. York

UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

In re:

Malachi Z. York,
Misnomer Dwight D. York,
Applicant

Case No. _____

EMERGENCY MOTION FOR ORDER AUTHORIZING THE DISTRICT COURT TO CONSIDER A SUCCESSIVE MOTION UNDER 28 U.S.C. §2255 BASED ON NEWLY DISCOVERED EVIDENCE OF FACTUAL INNOCENCE

TO THE HONORABLE JUDGES OF THE UNITED STATES COURT OF APPEALS:

**COMES NOW** the applicant, Malachi Z. York, misnomer Dwight D. York, proceeding through counsel, and respectfully moves this Honorable Court under 28 U.S.C. §2244(b)(3)(A) for an order authorizing the district court to consider a second or successive motion under 28 U.S.C. §2255. This motion is based on newly discovered evidence of factual innocence that was not available at the time of trial or the initial §2255 proceedings and which, when weighed against the evidence presented at trial, establishes actual innocence. If proven, this new evidence demonstrates that no reasonable factfinder would have found the applicant guilty. In support, the applicant states as follows:

## INTRODUCTION

The applicant is serving a sentence following his conviction in the United

States District Court for the Middle District of Georgia, Macon Division. The applicant contends that his convictions and sentences are unconstitutional because new evidence was not available and considered at trial. Based on the new evidence, it is evident that the applicant's convictions and sentences inherently result in a fundamental miscarriage of justice. The applicant hereby seeks relief from his unconstitutional imprisonment.

This request is not only legally appropriate but morally imperative. It is grounded in sworn affidavit testimony and government documents concealed, suppressed, or entirely absent from the original trial. The evidence exposes not merely flaws in the trial, but the intentional silencing of a child abuse victim, the granting of immunity to his abuser, and the use of that abuser as the government's key witness.

## I. <u>JURISDICTION AND VENUE</u>

This Court has jurisdiction over this action according to 28 U.S.C. §§ 2241 and 2255 as the applicant is in custody in violation of the Constitution or laws of the United States.

Venue is proper in this Court under 28 U.S.C. § 2241(d) because a federal court in this district imposed the applicant's convictions and sentences being challenged.

2

## II. PARTIES

The applicant is Malachi Z. York, Misnomer Dwight D. York, a federal prisoner at the U.S. Penitentiary Florence ADMAX, 5800 Highway 67 South, Florence, Colorado, 81226.

Respondent: Mistelle J. Starr, Warden of the U.S. Penitentiary Florence ADMAX has custody of the applicant under the federal court's judgment.

## III. STATEMENT OF FACTS

### A. A CASE BUILT ON A LIE

At the center of this newly discovered evidence is Isaam Ansari Williams, a former minor who: Was intimidated and threatened with prosecution by Putnam County Sheriff Office Detective Tracy Bowen for having sex with Nicole Lopez when he was a minor, under the age to consent; The intimidation and threat to Williams denied the applicant the Sixth Amendment right to a fair trial and to confront the witnesses against him; The intimidation and threat to Williams denied the applicant the Fifth Amendment right of due process. The intimidation and threat to Williams denied the applicant the Fourteenth Amendment due process right.

Williams' sworn affidavit and the Putnam County Sheriff's FOIA response reveal a horrifying pattern: After being intimidated and threatened with prosecution, the state told Williams the U.S. Attorney had granted immunity to Lopez and that

3

there was nothing they could do. Williams was threatened into silence and deprived of justice, while Lopez, his abuser, became the cornerstone of the government's case against the applicant. The applicant was convicted based on evidence discredited by newly discovered evidence of his actual innocence.

Specifically, the new evidence consists of the Putnam County Sheriff's Office's response to Williams' Freedom of Information Act Request. It shows Detective Tracey Bowen intimidating and threatening Williams by telling him and his mother that he could be charged as well for having sex with the key government witness, Nicole Lopez. See Exhibit "B", Case #20210764a, page 4. Lopez was twenty-five-year-old and could be charged with statutory rape of the fifteen-year-old Williams, except for a government grant of immunity. The age of consent in Georgia is sixteen. Williams could not be charged with having sex with Lopez.

Williams witnessed the letter written by another key government witness, his then-girlfriend Krystal Harden, to Putnam County Sheriff Howard Sills. Harden was outraged and embarrassed by being teased about Williams' relationship with Lopez and desperately wanted to leave the land. Her mother, Nicole Harden, refused to leave when she found out about the sex that Lopez and Williams were having continuously. When the conspiracy was conceptualized partly by Harden's desperation to leave the land, Dr. York wasn't on the land and lived at his other house and property in Athens,

4

Clarke County, Georgia. Krystal Harden then falsely accused the applicant of child molestation, to have him arrested and shut the land down.

Williams first reported his sexual abuse to the Department of Human Services. He was then directed to seek assistance at the Putnam County Sheriff's Office. There, Detective Tracey Bowen's intimidation and threat prevented him from providing the applicant with evidence that Lopez and her sister, Amala Noel, a/k/a Amanda, recruited him to join the conspiracy. Williams told them both no. See Exhibit "A".

Lopez was granted immunity for her statutory rape of Williams because she was a very important witness for the government. The prosecution used her as an "insider" who could claim first-hand knowledge of alleged patterns of abuse, group dynamics, and York's supposed influence. The government relied on Lopez's perjured and immunized testimony to manufacture a pattern of abuse. The jury didn't hear Williams' depiction of her as a sexual predator who first supplied him with alcohol before repeatedly raping him and recruiting him to join in the conspiracy to "take down Dr. York". He said no to the offer. And, it is not true that the state couldn't do anything after Lopez was granted federal immunity. She had not been given state immunity. The state could have charged her in the Superior Court of Putnam County with statutory rape.

The newly discovered evidence was unavailable at the time of the trial and

5

could not have been discovered earlier through due diligence. If presented to the jury, this new evidence would have created a reasonable probability of a different outcome at trial.

## IV. SUPPORTING FACTS

The newly discovered evidence undermines the validity of the prosecution's case, specifically: The applicant's conviction and sentence were based on a fundamentally unfair trial, given that the new evidence shows that no reasonable factfinder would have convicted him beyond a reasonable doubt had this evidence been presented. This failure undermines confidence in the trial's outcome, as it likely would have changed the result.

## V.. PROCEDURAL BACKGROUND

On May 2, 2002, the applicant was charged in the United States District Court for the Middle District of Georgia, in cause number 5:02-CR-27-CAR, in a multi-count indictment with, Count One Conspiracy to Commit Racketeering Violations, Count Two The Racketeering Violations, Count Three, Conspiracy to Transport Minors in Interstate Commerce for Unlawful Sexual Activity and Conspiracy to Commit Structuring of Cash Transactions, Count Four, Transporting Minors in Interstate Commerce for Unlawful Sexual Activity, Count Five, Transporting Minors in Interstate Commerce for Unlawful Sexual Activity, Count

6

Six, Transporting Minors in Interstate Commerce for Unlawful Sexual Activity, Count Seven, Traveling in Interstate Commerce to Engage in Unlawful Sexual Activity with Minors; Count Eight, Transporting Minors in Interstate Commerce for Unlawful Sexual Activity; Count Nine, Structuring Cash Transaction to Evade Currency Transactions Reporting Requirements; Count Ten, Structuring Cash Transaction to Evade Currency Transactions Reporting Requirements; Count Eleven, Structuring Cash Transaction to Evade Currency Transactions Reporting Requirements; Count Twelve, Rico Forfeiture Allegation; Count Thirteen, Unlawful Transport of Minors Forfeiture Allegation.

On January 23, 2004, following fourteen days of trial, a federal jury returned a guilty verdict on ten counts of the eleven-count indictment. On May 7, 2004, a Judgment was entered, sentencing the applicant to incarceration in the Federal Bureau of Prisons as follows: Count One, two hundred and forty months; count two, two hundred and forty months; Count Three, sixty months; Count Four, one hundred and eighty months; Count Five, one hundred and eighty months; Count Six, one hundred and eighty months; Count Seven, one hundred and eighty months; Count Nine, one hundred and twenty months; Count Ten, one hundred and twenty months; Count Eleven, one hundred and twenty months. All counts are to run consecutively for a total sentence of imprisonment of one thousand, six hundred and twenty months.

7

The applicant timely filed a notice of appeal to the Eleventh Circuit Court of Appeals.

On October 27, 2005, the Eleventh Circuit Court of Appeals affirmed the applicant's convictions and sentences in cause number 04-12354, cited as *United States v. Dwight D. York*, 428 F.3d 1325.

On June 27, 2007, the applicant filed a Motion to Vacate, Correct, or Set Aside the applicant's Sentence according to 28 U.S.C. §2255 [Doc. #382]. On August 6, 2007, an Amended Motion was filed. On January 6, 2009 [Doc. #400] and January 21, 2009 [Doc. #401], the district court entered a sealed order.

On May 11, 2009, a Pro-Se Motion for Relief by Recantation of Alleged Victims under 28 U.S.C. §2255 [Doc. #422]; a Pro-Se Motion by Judicial Notice for Evidence of Judicial Misconduct [Doc. #423]; a Pro-Se Motion to Vacate Sentence Due to Lack of Jurisdiction [Doc. #426]; a Pro-Se Motion by Evidence for Mandatory Judicial Notice in place of Misnomer Dwight York a/k/a Dwight Totten [Doc. #427].

On July 7, 2009, the applicant filed a Motion to Vacate Sentence due to Prosecutorial Misconduct under 28 U.S.C. §2255 {Doc. #442].

On July 29, 2009, the district court filed a Sealed Order denying Motions [Doc. #422], [Doc. #423], [Doc. #426], [Doc. #427], and [Doc. #442].

The applicant now seeks an order authorizing the district court to consider a

8

second or successive §2255 motion based on newly discovered evidence, according to 28 U.S.C. § 2255(h)(1).

## VI. BASIS FOR SUCCESSIVE MOTION

Section 2255(h)(1) authorizes a second or successive motion where:

> "newly discovered evidence that, if proven and viewed in light of the evidence as a grant, would be sufficient to establish by clear and convincing evidence that no reasonable fact finder would have found the movant guilty of the offense."

The newly discovered evidence consists of the following:

One: The Putnam County Sheriff's Office's response to a Freedom of Information Act (FOIA) Request of Issam Ansari Williams. It shows Detective Tracey Bowen intimidating and threatening Williams by telling him and his mother that he could be charged as well for having sex with Nicole Lopez. See Exhibit "B", Case #20210764a, page 4. At the time of the statutory rape, Lopez was twenty-five and Williams was fifteen. Lopez first supplied Williams with alcohol before statutorily raping him. She was granted immunity, whereas Williams was intimidated and threatened into silence. This law-enforcement intimidation and threat was meant to and did silence Williams and prevent him from seeking justice and testifying earlier in this case. It also kept him from speaking to Detective Bowen about what he knew about the conspiracy and the lies being told against Dr. York. He saw that Dr.

9

York, though innocent, had been arrested for the same thing he had reported.

Two: Williams' affidavit, Exhibit "A". He knows about the conspiracy to "take down Dr. York." He witnessed the letter written by Krystal Harden to Putnam County Sheriff Howard Sills. Harden was outraged and embarrassed by being teased about Williams' sexual relationship with Lopez and desperately wanted to leave the land. Her mother refused to leave when she found out about the sex that Lopez and Williams were having continuously. .

When the conspiracy was conceptualized, Dr. York wasn't on the land and lived at his other house and property in Athens, Clarke County, Georgia. Harden then falsely accused the applicant of child molestation, so that he could be arrested and the land shut down. The conspiracy ballooned when Lopez reunited with a former lover, Dr. York's son Jacob York, a/k/a Yacquwb Muhammad, and other disgruntled former members of the organization were recruited. They joined the conspiracy, hoping to make money from book, movie, and documentary deals and become famous. See Exhibit "A".

Three: It is a fundamental miscarriage of justice where the jury did not hear testimony that Nicole Lopez was able to supply alcohol to Williams before raping him, because on numerous occasions, she broke into the applicant's home and stole his alcohol. The fact that Dr. York was not home proves that he did not live in

10

Putnam County but instead lived in Athens, Clarke County, Georgia. Nicole can break into his house and steal his liquor to supply Williams. Nor did the jury hear how, in part, the conspiracy started and its motive. The fundamental miscarriage of justice results where the government grants Lopez immunity for statutory rape, whereas Dr. York is convicted and sentence to one thousand, six hundred and twenty months, and he is actually innocent.

Four: The applicant's Sixth Amendment right to a fair trial and to confront the witnesses against him was violated when law enforcement intimidated and threatened Williams into silence and prevented him from testifying on his behalf.

Fifth: The applicant's Fifth Amendment due process right were violated when law enforcement intimidated and threatened Williams into silence and prevented him from testifying on his behalf.

Sixth:The applicant's Fourteenth Amendment due process rights were violated when law enforcement intimidated and threatened Williams into silence and prevented him from testifying on his behalf.

Seven: New evidence, in the form of the FOIA response, questions Nicole Lopez's credibility and begs the question of whether she has violated her immunity agreement. In January 2004, she told the jury she was kicked off the land. See Exhibit "C." In June 2001, she told FBI Special Agent Joan Cronier that she left the land on

11

her own volition. See Exhibit "D, page 4"

The newly discovered evidence was not available at the time of trial or during the applicant's initial §2255 motion and could not have been discovered earlier through the exercise of due diligence. This evidence would have created a reasonable probability of a different outcome at trial if presented to the jury.

The new evidence, taken together with the record, would establish the applicant's factual innocence. The new evidence, taken together with the record, would demonstrate that a miscarriage of justice has occurred.

## VII. NEW EVIDENCE ATTACHED

The applicant attaches the following documents in support of this motion:

Exhibit A – Affidavit of Isaam Ansari Williams, dated April --, 2025,

Exhibit B – The Putnam County Sheriff's Office response to a Freedom of

Information Act Request of Issam Ansari Williams.

These exhibits demonstrate that no reasonable jury, confronted with this evidence, would have convicted the applicant.

## VIII. RELIEF REQUESTED

Based on the foregoing, the applicant respectfully requests that the Court grant this motion for authorization and issue an order permitting the applicant to file a successive § 2255 motion in the United States District Court for the Middle District

12

of Georgia.

This is the 30th day of April, 2025.

Respectfully submitted,

MALACHI Z. YORK,
MISNOMER DWIGHT D. YORK

By: _____
Imhotep Alkebu-lan GA Bar #602826

P.O. 54863
Atlanta, GA 30308
404-855-4646 Telephone
404-254-0701 Telecopier
ialkebulan@aol.com

ATTORNEY FOR APPLICANT

<u>Certificate of Service</u>

This is to certify that on the below date a true and correct copy of the foregoing was

mailed first class, postage prepaid, to the office of the c    following individual(s):

Mistelle J. Starr, Warden
US Penitentiary Florence ADMAX
5800 Highway 67 South
Florence, Colorado 81226

This is the 30th day of April 2025.

_____
Imhotep Alkebu-lan

13

STATE OF GEORGIA

COUNTY OF DEKALB

## AFFIDAVIT OF ISAAM ANSARI WILLIAMS

**Before me**, the undersigned authority, personally appeared Isaam Ansari Williams, who, after first being personally known by me, deposes and says:

"My name is Isaam Ansari Williams. I was born on May 8, 1985. I am of a clear mind and body and solemnly swear under oath to declare and affirm under the penalty of perjury that the following statement is true and correct to the best of my knowledge and belief. I was not offered money, nor was I threatened or coerced into making my truth be known.

For years, I felt trapped. I wanted justice, but fear silenced me. Each time I tried to speak out, I hesitated, sharing only fragments of the truth. Every time I tried to tell my story, I held back key details because of the threat made against me by the Putnam County Sheriff Detective Tracey Bowen, which only my mother and I knew about. When I attempted to report the crime in August 2002 against Nicole Lopez, a.k.a. Niki, a.k.a. Adah, age of twenty-five at the time, that she was having unlawful sex with me on multiple occasions when I was fifteen years old. Instead of protecting me, Detective Bowen abused her power to intimidate and threaten me with jail time. This was intended to silence me and prevent me from seeking justice. It also kept me from speaking any further to Detective Bowen about what I knew about the conspiracy and lies being told against Dr. Malachi York. I saw that he had been arrested for the same thing I had reported to her, since she was a police officer. Can you imagine being a child and asking for help, only for it to backfire on you? I'm still suffering years later because of it to this day.

The threat took a toll on my mother as well, leaving her feeling powerless, as she couldn't help her child against a sexual predator. On top of that, she was informed later that Nicole Lopez was



granted immunity and that she would never face prosecution for her crimes.

I knew firsthand that there was a conspiracy to take down Dr. York because I witnessed how it all started. My then-girlfriend, Krystal Harden, was involved in this conspiracy and was one of the people who falsely accused Dr. York of molesting her. Krystal, also known as Beluwra, showed me a letter she had written to Sheriff Howard Richard Sills to frame and to have Dr. York taken down by falsely accusing him of child molestation, to have him arrested. This way, Tama-Re (the name given to the land) could no longer exist because her mother refused to leave when she found out about the sex that Nicole Lopez and I were continuously having. Krystal was outraged and embarrassed by being teased about it and desperately wanted to leave Tama-Re. Dr. York never molested her, and everyone knows this. Others witnessed the letter just as I did.

When Nicole Lopez got on the witness stand during Dr. York's trial, she admitted to having sex with me and another young boy. She didn't tell the truth on the witness stand about how and when she started her sexually manipulative relationship with me. Her version sounds like testimony to frame Dr. York and keep herself from being prosecuted for what she had done to me and another minor. Krystal never told me about anything that happened to her with Dr. York because she was never close to him. These are the questions I always had for Nicole. How does Dr. York do anything to any of you when the conspiracy was made up, if he wasn't even there on Tama-Re and was living in Athens, Georgia, at his other house and property? How were you able to break into his home on Tama-Re to steal his good alcohol, as you would say, to get me and others drunk to take advantage of us sexually? The Math isn't adding up. The house had to be empty. Nicole broke into Dr. York's house on Tama-Re all the time to steal his expensive alcohol that people from around the world would gift to him. Nicole knew that Dr. York was in Athens, Georgia. We all knew it. That's how

2

everyone was able to plot, and for me and her to have sex on multiple occasions, even in Dr. York's RV Zimmer. A brother walked in on us in the Zimmer and caught us having sex.

When Nicole Lopez would leave Tama-Re to go to work in Atlanta, she told me she ran into Jacob York, an ex-boyfriend and the son of Dr. York. She said she started dealing with him again, and that's when I started hearing about an even bigger conspiracy to take down Dr. York. In the year 2000, Nicole Lopez and her sister, Amala Noel, a/k/a Amanda, tried to recruit me to lie and join them in making false claims against Dr. York. Amala said we would make lots of money with book, movie, and documentary deals and become famous.    I told them both no. I didn't believe they would frame Dr. York with lies, all for money and fame. I knew what was happening to Dr. York was wrong.

I missed my opportunity to expose the conspiracy, due to Detective Tracy Bowen's threat of me going to jail when I reported Nicole's crimes against me in 2002, knowing that I knew what Krystal Harden, Nicole Lopez, and others had done was a lie against Dr. York. Nicole had gotten away with what she had done to me and another young boy on Tama-Re.

The most significant weapon law enforcement and federal agents use is fear. Just like I was threatened to stay silent about Lopez raping me and exposing the conspiracy against Dr. York others recanted or wanted to tell the truth about how they were also threatened by law enforcement and federal agents. We all had a common threat hanging over us. I can only imagine how others who wanted to change their minds after participating in this conspiracy are feeling right now, for what they know to be a lie, and were threatened to continue with the lie or else face prosecution.

For years, I battled with depression, alcohol, and drug use, trying to cope with the fact that I wasn't given justice, and an innocent man was sitting in prison for crimes he did not commit.

3

Meanwhile, Nicole Lopez walked away a free woman, a sexual predator who admitted under oath to having sex with underage boys. She dared to accuse Dr. York of the same crime that she had committed. If they all wanted to leave, they should have just left like others did. Krystal back then was a minor and her mom didn't want to go, then she could have called another relative to come and pick her up, Instead, she started a lie that grew into a giant snowball conspiracy that even her very own mother Nicole Harden later joined in on with Nicole Lopez and others to take down Dr. York for various disgruntled reasons. Nicole Lopez's involvement with Jacob York on the 2001 trip to South Beach, Florida, further demonstrates her role in fabricating allegations against Dr. York. It destroyed our land and caused guns to be pointed in the faces of little children.

It wasn't until years later, when I confided in close, supportive friends, that I realized I didn't need to back down from my claims and let my voice be heard. This compelled me to share every detail, not just for my own sake but to help correct the injustice that I knew had been done to Dr. Malachi Z. York.

In 2023, a friend accompanied me to the Putnam County Sheriff's Department, still afraid but determined to press charges against Nicole Lopez. Sheriff Howard Richard Sills informed me via phone days later that, as he was unavailable at his office, nothing could be done because Lopez had been granted immunity. I was advised by Sills to contact the new DA, Wright Barksdale. My friend attempted to contact the DA several times, but they were always busy. This friend was also on the phone when I spoke with Sheriff Sills.

I filed a Freedom of Information Act request to obtain the records of my interview with Detective Bowen, where I was threatened. When I read the report, it confirmed exactly what I had been afraid to share with others for years. The threat wasn't just in my memory. It was documented.

4

When I read that Detective Bowen and FBI Agent Jalaine Ward informed Nicole Lopez about my attempt to press charges against her for raping me, it became clear that law enforcement was working to protect my abuser instead of me. After reading the FOIA report, I learned that instead of taking action to arrest Nicole and investigate my claims, they gave her immunity forty-six days after I reported the sexual abuse. This meant to me that the prosecution's decision to grant immunity to a known perpetrator while using her testimony to convict an innocent man is a clear violation of justice. They never intended to prosecute her. They only protected her because she was helpful in their case to convict Dr. York.

I am coming forward now because I refuse to remain silent any longer. Dr. York is innocent. I have lived with the burden of knowing how this conspiracy was formed and executed. From my own experience with law enforcement and the lies of Nicole Lopez, I know what it's like to have law enforcement silence victims, manipulate testimony, and twist the truth for their own agenda. Sheriff Howard Richard Sills knew what the District Attorney and his detective did to me. I also learned the real nefarious reason behind Nicole's immunity agreement.

Now, with documented proof of the threat against me and a clear understanding of why Nicole was given immunity, which was orchestrated to secure a wrongful conviction, I can no longer keep this inside. I want justice for myself, accountability for Nicole Lopez, and the truth to be exposed about why Dr. York was locked up, which was based on a conspiracy of lies, coercion, and threats and he should be released.

Under the penalty of perjury, I declare that the foregoing is true and correct to the best of my knowledge and belief."

5

Further Affiant saith not.

_____
Isaam Ansari Williams

SWORN AND SUBSCRIBED TO before me this is the ___ day of _____, 2025.

_____
Notary Public

My Commission Expires:

_____

6

Isaam Ansari Williams
c/o 115 Whitney Chase
Stone Mountain, GA 30088

IsaamWilliams2@gmail.com

Date: _6 - 25 - 24_

Office of General Counsel
Attn: **Philbie Mathew**
   Open Recorders Officer
47 Trinity Avenue SW
Atlanta, Georgia 30334

openrecordsdhs@dhs.ga.gov
Fax: (404) 657-1123

via FEDEX _Tracking 2763 6976 2215_, with return signature.

**RECEIVED**
**JUL 02 2024**
**DHS OFFICE of GENERAL COUNSEL**

*Request To Agent Is Request To Principal, Request To Principal Is Request To Agent*

## OPEN RECORDS and CLIENT CASE RECORD REQUESTS

**Philbie Mathew:**

This is a request for copies of <u>all</u> *public records*: all documents, papers, letters, maps, books, tapes, photographs, computer based or generated information, data, data fields, or similar material prepared and maintained or received by the **Department of Human Services (DHS)**, **Division of Family & Children Services (DFCS)**, or by a private person or entity in the performance of a service or function for or on behalf of the Department of Human Services (DHS), Division of Family & Children Services (DFCS), or when such documents have been transferred to a private person or entity by the Department of Human Services (DHS), Division of Family & Children Services (DFCS), for storage or future governmental use, pursuant to the Open Records Act (ORA), O.C.G.A. §50-18-70 et. seq.

I am requesting copies of <u>all communications</u> involving the investigation of my **"Isaam Ansari Williams"** childhood sexual abuse/assault by **Nicole Lopez**, reported to Detective **Lt., Tracey Bowen** of the Putnam County Sheriff's Office, by my mother **Brenda Williams** on or about 10/4/2002 through 2004.

This request includes but is <u>not limited to</u> copies of the following:

1. Child Protective Services (CPS) History Request Form(s);
2. Client Case Record;
3. All communications with Putnam County Sheriff's Office regarding Isaam Ansari Williams;
4. All communications with Putnam County Sheriff's Office regarding Nicole Lopez;
5. All communications with GBI regarding Isaam Ansari Williams;
6. All communications with GBI regarding Nicole Lopez;
7. All communications with US District Attorney Office-Macon regarding Isaam Ansari Williams;
8. All communications with US District Attorney Office-Macon regarding Nicole Lopez;
9. All communications with FBI regarding Isaam Ansari Williams;
10. All communications with FBI regarding Nicole Lopez.

Respectfully,

**Isaam Ansari Willia**
(706) 621-3477

**EXHIBIT**
" B "

 Gmail

Isaam Williams <isaamwilliams2@gmail.com>

## 20210764
1 message

**Russell Blenk** <chiefblenk@putnamcountysheriff.org>
To: "isaamwilliams2@gmail.com" <isaamwilliams2@gmail.com>

Fri, Aug 9, 2024 at 4:56 PM

Isaam Williams,

The following is in response to your Open Records Request:

Item 1 – incident report and investigative summaries are being sent as file attachments

Item 2 – recorded phone call mentioned in 20210764c cannot be located

Item 3 – non-existent record

Yours truly,

RPB

*Col. Russell Blenk, Chief Deputy*

*Putnam County Sheriff's Office*

*111 Ridley Drive*

*Eatonton, Ga 31024*

*Tel: 706-485-8557*

*Fax: 706-485-4840*

**Confidential Disclaimer:** *This message is intended exclusively for the individual or entity to which it is addressed. This communication may contain information that is proprietary, privileged, confidential or otherwise legally exempt from disclosure. If you are not the named addressee, you are not authorized to read, print, retain, copy or disseminate this message or any part of it. If you have received this message in error, please notify the sender immediately by e-mail and delete copies of the message.*

**2 attachments**

 **NB_INCIDENT_20210764.PDF**
34K

 Gmail

Isaam Williams <isaamwilliams2@gmail.com>

## 20210764

1 message

**Russell Blenk** <chiefblenk@putnamcountysheriff.org>                    Thu, Nov 14, 2024 at 4:27 PM
To: "isaamwilliams2@gmail.com" <isaamwilliams2@gmail.com>

Isaam Williams,

The following is in response to your Open Records Request dated 11/08/2024.

Item 1 (tape recording) - You were previously advised on 08/09/2024 that the recorded phone call could not be located

Item 2 (report for 20210764) - The report and investigative summaries were previously sent to you on 08/09/2024

Yours truly,
RPB


Col. Russell Blenk, Chief Deputy

Putnam County Sheriff's Office

111 Ridley Drive

Eatonton, Ga 31024

Tel: 706-485-8557

Fax: 706-485-4840

**Confidential Disclaimer:** This message is intended exclusively for the individual or entity to which it is addressed. This communication may contain information that is proprietary, privileged, confidential or otherwise legally exempt from disclosure. If you are not the named addressee, you are not authorized to read, print, retain, copy or disseminate this message or any part of it. If you have received this message in error, please notify the sender immediately by e-mail and delete copies of the message.

Case #20210764a

On Tuesday, August 20, 2002 at approximately 4:15 p.m., PCSO Detective Tracey Bowen interviewed Isaam Williams in furtherance of this investigation. This interview took place at the Putnam County Sheriff's Office. Isaam is currently 17 years of age and was interviewed alone. Isaam stated essentially the following.

During the beginning of the summer of 2000, Isaam would spend a lot of time at 404 Shadydale Road helping to prepare for the annual Zed Festival that is put on by the United Nuwaubian Nation of Moors. His mother would drop him off out there and sometimes he would spend a couple of nights there or he may even stay there as long as a week at a time.

Isaam stated that he had seen Nicole Lopez around the land because she lived there. She was approximately 23-years-old at the time. He was attracted to her and wanted to talk to Nicole. They started gradually talking to one another and struck up a friendship. They really weren't able to talk during the day because there were so many people around, so they would meet at the playground at night and talk.

The first occasion that Isaam can remember where something sexual in nature occurred between him and Nicole, was a couple of weeks after the festival in 2000. Isaam and Nicole were at the playground talking one night and Nicole asked him if he wanted to go somewhere else and sit and talk. He told her yes, but he didn't know where to go. She told him that she had thought of a place and they walked to where the red stretch van, known as the "Zema", was parked. This was in the parking lot between Malachi York's residence and the temple where other vehicles were parked. It was locked, so they picked the lock and got into the back of the van.

1

Once inside the van, they talked for a while and she sat on his legs and began rubbing his shoulders. Isaam stated that he knew what she wanted because this was not his first sexual experience. He has had sexual intercourse a couple of times before with a fifteen-year-old girl. I asked him what happened between Nicole and himself and he stated that there was definitely foreplay before the intercourse. They both performed oral sex on each other and had sexual intercourse. Isaam did not use a condom. He stated that he also had anal sex with Nicole. Once they were finished, he went back to the boy's trailer where he was staying. One of the boys that was there at the time was called Shilamou, who was 18 or 19-years-old. Isaam stated that he didn't tell him or anyone else about what had just happened.

On more than one occasion, he and Nicole went to the lake that is located on the property. It was very secluded and they would take a blanket and lay on it by the water. Again, some of the same sexual activity would occur and he would not use a condom. Isaam stated that when he would ejaculate, he would pull out and ejaculate on the ground or she would put her mouth on his penis while he ejaculated.

On another occasion, Isaam was staying at Dr. Thompson's trailer on the land with Dr. Thompson's sons. He was just hanging out there. They were watching t.v., when Nicole came to the trailer. Isaam and Nicole went back to a bedroom and started "messing" around. During this time, he left the room and went in the living room and got a condom from one of the other boys. He then went back in the bedroom and he and Nicole had sex. Isaam admitted that he and Nicole had already planned it out for her to come up to the trailer so they could have sex. He stated that he did not tell the other boys what had happened, but they probably figured it out since he got the condom from one of them. After this incident, they were scared that someone might find out,

2

so they "cooled" their relationship for a while.  Nicole eventually left the land and that's why their relationship stopped.  Isaam admitted that if she had not left, he would have continued the sexual relationship with her.

I asked Isaam if he knew approximately how many times he and Nicole had engaged in sex and he stated that probably more than five, but no more than ten.  I then asked him if he had told anyone at all about this incident that he was reporting and he stated that he had not told anyone except his mother and that he really didn't give her any details. Isaam admits to having one sexual partner since then and stated that he is in a relationship with this same person.

I then asked Isaam if he ever felt forced by Nicole to participate in these acts. He stated no, that he enjoyed them because he was younger and having sex with an older female.  He never told Nicole that he didn't want to have sex with her and he could have gotten up and left during any of these occasions, but chose not to.  I explained to Isaam that even though there was no force, this could still be viewed as statutory rape.

Isaam then inquired as to whether or not his name would be made public and how far this case would go. I advised him that if we charged Nicole and this case made it to court, his name would be released to the prosecuting attorney and defense attorney. Isaam appeared to be very uncomfortable with this and stated that he didn't want his name made public.   I asked Isaam what he wanted to see done in this case. He stated that he really didn't want to see anyone go to jail, but if they did something wrong, they needed to suffer the consequences.  Isaam further stated that it had been approximately three months since he had spoken to Nicole.

3

Isaam was unable to provide any further information at this time.  I advised him and his mother that I would be in touch.   His mother also questioned me as to his name being released to anyone. I explained the same thing to her that I had explained to him.  She also seemed very uneasy about the possibility of his name being released.   I also explained to both of them that Isaam could be charged as well for having sex with Nicole, which is commonly done by the District Attorney's Office in cases of Statutory Rape.

Attachment:          *DFACS Intake report

I.D. Data:            *Isaam Williams
                     B/M     DOB:          1985
                     SS#
                     Address: 154 Old Godfrey Hwy., Eatonton, Ga. 31024
                     Phone: 706/485-0458
                     Student at Macon Tech in Milledgeville and works part-time
                     at Magnolia House Restaurant

The investigation continues.

Detective Tracey Bowen:          08-28-2002
tlb/08-28-2002

4

