UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

In re:
Malachi Z. York,
Misnomer Dwight D. York,
Applicant

Case No. 25-11486H

MEMORANDUM OF LAW IN SUPPORT OF
EMERGENCY MOTION FOR ORDER AUTHORIZING THE DISTRICT
COURT TO CONSIDER A SUCCESSIVE MOTION UNDER 28 U.S.C. §2255
BASED ON NEWLY DISCOVERED EVIDENCE OF FACTUAL INNOCENCE

TO THE HONORABLE JUDGES OF THE UNITED STATES COURT OF
APPEALS:

**COMES NOW** the applicant, Malachi Z. York, misnomer Dwight D. York,

proceeding through counsel, and respectfully moves this Honorable Court under 28

U.S.C. §2244(b)(3)(A) and files this Memorandum of Law in support of an order

authorizing the district court to consider a second or successive motion under 28

U.S.C. §2255. This motion is based on newly discovered evidence of factual

innocence that was not available at the time of trial or the initial §2255 proceedings

and which, when weighed against the evidence presented at trial, establishes actual

innocence. If proven, this new evidence demonstrates that no reasonable factfinder

would have found the applicant guilty. In support, the applicant states as follows:

## I. INTRODUCTION

The applicant submits that his convictions were obtained by a government

agent threats against a key defense witness in violation of his Sixth Amendment right to a fair trial and to confront the witnesses against him and the Fifth Amendment right to due process, where a law enforcement official engaged in conduct that threatened, intimidated, or otherwise interfered with a defense witness, thereby preventing the witness from testifying in his favor at trial. This government misconduct, in the form of new evidence discovered in a response to the victim's Freedom of Information Act Request, denied the applicant a fundamentally fair trial.

## II. LEGAL STANDARD

Pursuant to 28 U.S.C. §§ 2255(h) and 2244(b)(3)(A), an applicant can seek an order authorizing the district court to consider a second or successive motion to vacate, set aside, or correct his federal sentence, 28 U.S.C. § 2255. Such authorization may be granted only if this Court certifies that the second or successive motion contains a claim involving: (1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or (2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable. 28 U.S.C. § 2255(h). "The court of appeals may authorize the filing of a second or successive application only if it determines that the application makes a prima facie

showing that the application satisfies the requirements of this subsection." Id. §2244(b)(3)(C); see also *Jordan v. Secy, Dep't of Corrs*., 485 F.3d 1351, 1357-58 (11th Cir. 2007) (explaining that this Court's determination that an applicant has made a prima facie showing that the statutory criteria have been met is simply a threshold determination). *In re Wright*, 942 F.3d 1063 (11th Cir. 2019).

Section 2255(h)(1) authorizes a second or successive motion where:

> "newly discovered evidence that, if proven and viewed in light of the evidence as a grant, would be sufficient to establish by clear and convincing evidence that no reasonable fact finder would have found the movant guilty of the offense."

## III. THE LAW

*A. Threats against a witness*:

In a direct appeal context, a criminal defendant has a constitutional right to present his witnesses to establish a defense. *United States v. Terzado-Madruga*, 897 F.2d 1099, 1108 (11th Cir. 1990) (citations omitted). "Threats against witnesses are intolerable. Substantial government interference with a defense witness' free and unhampered choice to testify violates due process rights of the defendant." *United States v. Goodwin*, 625 F.2d 693, 703 (5th Cir. 1980). Examples of substantial interference include singling out a witness to assure the witness that he would be prosecuted and convicted of perjury, *Webb v. Texas*, 409 U.S. 95, 97–98, 93 S.Ct.

3

351, 353, 34 L.Ed.2d 330 (1972), prohibiting a codefendant from testifying in any manner if he accepts a plea agreement, *Henricksen*, 564 F.2d at 198, and threatening that the government will retaliate if the witness continues to testify, *United States v. Hammond*, 598 F.2d 1008, 1012–13 (5th Cir.1979). See also id. at 1012 (collecting cases). The defendant also "must establish ... that the government's action worked to deprive him of a witness who could have testified on his behalf." *United States v. Garmany*, 762 F.2d 929, 937 (11th Cir.1985). *United States v. Duperval*, 777 F.3d 1324 (11th Cir. 2015).

If such a due process violation occurs, the court must reverse without regard to prejudice to the defendants. *Id*. In a case involving a motion for a new trial based on witness intimidation, this Court explained that "[w]here defendants present evidence to the district court that the government intimidated a defense witness[,] a trial court must grant a hearing to determine whether the allegations of intimidation are true. If the witness did not testify, and the allegations of intimidation are true, no prejudice need be shown." United States v. Schlei, 122 F.3d 944, 992 (11th Cir. 1997) (emphases added); Goodwin, 625 F.2d at 703 ("On this appeal we now face unresolved claims of government intimidation of defense witnesses. If we were not reversing the convictions on other grounds, we would be required to remand to the district court for findings on the validity of these claims. And if proven, such

violations of due process would require automatic reversal."). *Williams v. United States*, No. 07-15486 (11th Cir. 9/19/2008), No. 07-15486. (11th Cir. Sep 19, 2008).

*B. The Sixth Amendment*:

The right to a fair trial is so basic to our legal system that it has been called 'the most fundamental of all freedoms. *U.S. v. Noriega*, 917 F.2d 1543 (11th Cir. 1990). The Sixth Amendment guarantees the right to a fair trial. *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 551 (1976)." *Alford v. United States*, 22-14318 (11th Cir. Mar 03, 2025). When a criminal defendant claims a violation of his Fifth and Sixth Amendment right to call witnesses in his defense, we assess these claims under a two-step analysis. *United States v. Hurn*, 368 F.3d 1359, 1362 (11th Cir. 2004). First, we examine whether the defendant's constitutional rights have actually been violated, and then ask whether the error was "harmless beyond a reasonable doubt." Id. at 1362-63 (quotation omitted). The inquiry under the harmless error doctrine is whether there was a "reasonable possibility" that the excluded evidence contributed to the guilty verdict. *United States v. Cruz*, 765 F.2d 1020, 1025 (11th Cir. 1985). *United States v. Jones*. D.C. Docket No. 6:09-cr-00264-GKS-KRS-1, No. 10-15450 (11th Cir. Feb 02, 2012).

The sixth amendment is inextricably bound up with the fairness of a defendant's trial: "[T]he right to the effective assistance of counsel is recognized not

5

for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial." *Cronic*, 466 U.S. at 658, 104 S.Ct. at 2046 (emphasis added). "[T]he Sixth Amendment's purpose is not to improve the quality of legal representation...." *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. "The purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding. "Accordingly, any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution.' Id. at 691-92, 104 S.Ct. at 2067 (emphasis added)." *Luckey v. Harris*, 896 F.2d 479 (11th Cir. 1989).

The Confrontation Clause reflects a preference for literal confrontation at trial. *Ohio v. Roberts*, 448 U.S. 56, 63, 100 S.Ct. 2531 2537, 65 L.Ed.2d 597 (1980); *California v. Green*, 399 U.S. 149, 157, 90 S.Ct. 1930, 1934-35, 26 L.Ed.2d 489 (1970). As the Court noted in *California v. Green*, supra, confrontation ensures that the witness will testify under oath, forces the witness to undergo cross-examination and makes it possible for the jury to observe the witness and thereby better able to assess credibility, 399 U.S. at 158, 90 S.Ct. at 1935, 26 L.Ed.2d at 497. The chances for discovery of truth are enhanced by testimony under oath, subject to cross-examination, and given before a jury. It is because these means of testing

6

accuracy are so important that the lack of proper confrontation at trial "calls into question the ultimate 'integrity of the fact-finding process.'" *Chambers v. Mississippi*, 410 U.S. 284, 295, 93 S.Ct. 1038 1046, 35 L.Ed.2d 297 (1973), quoting *Berger v. California*, 393 U.S. 314, 315, 89 S.Ct. 540, 541, 21 L.Ed.2d 508 (1969).

*C. The Fifth Amendment*:

We have acknowledged that the Supreme Court has established "that the Due Process Clause of the Fifth Amendment impliedly imposes the same obligations on the federal government as does the Equal Protection Clause on the states____" *United States v. Houston*, 456 F.3d 1328, 1335 n.5 (11th Cir. 2006). Accordingly, "any alleged violations of those obligations are analyzed in the same way as an alleged violation of the Equal Protection Clause by a state actor." Id. "The central mandate of the equal protection guarantee is that the sovereign may not draw distinctions between individuals based solely on differences that are irrelevant to a legitimate government objective." *Lofton v. Sec'y of Dep't of Children and Family Servs.*, 358 F.3d 804, 817 (11th Cir. 2004) (internal quotation marks and alteration omitted). Thus, the Equal Protection Clause "simply keeps governmental decision makers from treating differently persons who are in all relevant respects alike." Id. at 818 (internal quotation marks omitted). "Unless the challenged classification burdens a fundamental right or targets a suspect class, the Equal Protection Clause requires only

that the classification be rationally related to a legitimate state interest." Id. *United States v. Cruz-Mejias*, D.C. Docket No. 5:08-cr-00022-WTH-GRJ-1, No. 10-10342 (11th Cir. Sep 16, 2010).

In *Washington v. Texas*, 388 U. S. 14, 19, 87 S. Ct. 1920; 18 L. Ed. 2d 1019 (1967), we stated: "The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is, in plain terms, the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law." In *Webb v. Texas*, 409 U.S. 95, 98, 93 S.Ct. 351, 353-54, 34 L.Ed.2d 330 (1972), the Court found that the fact that the judge's remarks were directed only at the single witness for the defense, and that they went far beyond the permissible bounds of conduct, amounts to a violation of the due process rights of the accused. "To prevail on a procedural due process challenge, the petitioner must show that the violation substantially prejudiced him. *Ka Fung Chan v. I.N.S.*, 634 F.2d 248, 258 (5th Cir. Jan.1981); *Patel v. U.S. Att'y Gen.*, 334 F.3d 1259, 1263 (11th Cir.2003)." *Frech v. U.S. Atty. Gen.*, 491 F.3d 1277 (11th Cir. 2007).

*D. The Fundamental-Miscarriage-of-Justice Exception*:

8

The fundamental miscarriage of justice exception excuses any untimely filing by the applicant. In the context of a habeas proceeding under 28 U.S.C. §2255, "a credible showing of actual innocence may allow a prisoner to pursue his constitutional claims (here, denial of a fair trial, to confront witnesses, and to due process violations) on the merits notwithstanding the existence of a procedural bar to relief." *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013). This rule, known as the "fundamental miscarriage of justice exception, is grounded in the 'equitable discretion' of habeas courts to see that federal constitutional errors do not result in the incarceration of innocent persons." Id. (quoting *Herrera v. Collins*, 506 U.S. 390, 404 (1993)). To invoke the fundamental-miscarriage-of-justice exception, the defendant "must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Id*. at 399 (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)). *United States v. Perez*, No. 20-13556 (11th Cir. Feb 23, 2021).

IV. FACTUAL BACKGROUND AND NEWLY DISCOVERED EVIDENCE
A CASE BUILT ON A LIE

At the center of this newly discovered evidence is Isaam Ansari Williams, a former minor who: Was intimidated and threatened with prosecution by Putnam County Sheriff Office Detective Tracy Bowen for having sex with Nicole Lopez, a

9

key government witness, when he was a minor, fifteen years old and under the State of Georgia age to consent; The intimidation and threat to Williams denied the applicant the Sixth Amendment right to a fair trial and to confront the witnesses against him. The intimidation and threat to Williams also denied the applicant the Fifth Amendment right to due process.

Williams' affidavit and the Putnam County Sheriff's FOIA response, Exhibit "B," reveal a horrifying pattern: After being intimidated and threatened with prosecution, law enforcement then told Williams the U.S. Attorney had granted immunity to Lopez and that there was nothing they could do. Williams was a fifteen-year-old minor threatened into silence and deprived of justice, while Lopez, his abuser, became the cornerstone of the government's case against the applicant. She admitted to acts that the applicant was convicted of, and he is actually innocent. The applicant was denied a fair trial and the right to confront the witnesses against him. He was also denied due process. He was convicted based on evidence discredited by newly discovered evidence of his actual innocence.

Specifically, the new evidence consists of the Putnam County Sheriff's Office's response to Williams' Freedom of Information Act Request. It shows Detective Tracey Bowen intimidating and threatening Williams by telling him and his mother that he could be charged as well for having sex with the key government witness,

10

Nicole Lopez. See Exhibit "B", Case #20210764a, page 4. Lopez was twenty-five-year-old and could be charged with statutory rape of the fifteen-year-old Williams, except for a government grant of immunity. The age of consent in Georgia is sixteen. Therefore, Williams could not be charged with having sex with Lopez.

Williams witnessed the letter written by another key government witness, his then-girlfriend Krystal Harden, to Putnam County Sheriff Howard Sills. Krystl was outraged and embarrassed by being teased about Williams' relationship with Lopez and desperately wanted to leave the land. Her mother, Nicole Harden, refused to leave when she found out about the sex that Lopez and Williams were having continuously. When the conspiracy was conceptualized, partly by Harden's desperation to leave the land, Dr. York wasn't on the land and lived at his other house and property in Athens, Clarke County, Georgia. His absence from the land facilitated the making of the fabricated conspiracy. As a result, Krystal Harden then falsely accused the applicant of child molestation, to have him arrested and shut the land down.

Williams first reported his sexual abuse to the Department of Human Services. He was then directed to seek assistance at the Putnam County Sheriff's Office. There, Detective Tracey Bowen's intimidation and threats prevented him from providing the applicant with evidence that Lopez and her sister, Amala Noel, a/k/a Amanda, recruited him to join the conspiracy. Williams told them both no. See Exhibit "A".

Also, Williams was threatened into silence so that he did not tell the jury of Krystal Harden's motive to allege child molestation falsely.

The newly discovered evidence was unavailable at the time of the trial and could not have been discovered earlier through due diligence. If presented to the jury, this new evidence would have created a reasonable probability of a different outcome at trial.

## V. ARGUMENT

Here, there was substantial government interference with a defense witness' free and unhampered choice to testify violates due process rights of the defendant. Not only did a government agent threatened Williams, a minor, but also his mother. The government agent violated the applicant's Fifth Amendment due process rights by threatening a key defense witness, thereby preventing him from testifying. Materiality, Williams' testimony would have supported the applicant's defense of actual innocence. Provide evidence of the conspiracy to testify falsely against him and provide proof of Lopez breaking into the applicant's home to steal his liquor to get Williams intoxicated before raping him.

Putnam County Sheriff's Office Detective Bowen engaged in conduct intended to dissuade or intimidate Williams from not testifying against Lopez, the government's key witness against the applicant, threatening him with prosecution for

wanting to bring charges against her and testifying for the applicant. Williams wanted to tell Bowen about the conspiracy against the applicant. But after the threats, he was not so inclined. The government's conduct worked. It resulted in Williams's silence to testify. Williams' missing testimony was material and favorable to the defense. It showed how, in part, the conspiracy to take down Dr. York started and its motives. The government's misconduct deprived the applicant of the right to a fair trial. The excluded testimony went directly to the defense theory of the case, that there was a conspiracy to take down the applicant. Without it, the jury heard only the government's version of events. Had the testimony been allowed, there is a reasonable probability the outcome would have been different.

The Sixth Amendment right to a fair trial is so basic to our legal system that it has been called 'the most fundamental of all freedoms. The Fifth Amendment's Due Process Clause likewise guarantees a fair trial, which includes the right to present witnesses in one's defense. When law enforcement officials, and government agents threaten and intimidate a witness, there is a witness for the defense, such that the witness refuses to testify. This constitutes government interference with a defense witness and can rise to a constitutional violation. Williams was prepared and willing to testify. Lopez told the government that Williams had visited with the applicant's lawyers.

13

Lopez was a key government witness. Before the trial, Detective Bowen warned Williams and his mother that he could be prosecuted for having sex with Lopez. This warning had no factual or legal basis and was issued solely to intimidate. Williams, at the time, was still a minor. The age of consent in Georgia is sixteen. Williams could not consent to having sex with Lopez and could not, therefore, be prosecuted. As a direct result of this threat, Williams' mother did not want him to testify. Williams felt intimidated and threatened not to, and did not testify. The applicant was thus deprived of this exculpatory evidence essential to his defense.

The fact she was granted immunity for her statutory rape of Williams underlies how important a witness she was. The prosecution used her as an "insider" who could claim first-hand knowledge of alleged patterns of abuse, group dynamics, and York's supposed influence. The government relied on Lopez's perjured and immunized testimony to manufacture a pattern of abuse. The jury didn't hear Williams' depiction of her as a sexual predator who first supplied him with alcohol before repeatedly raping him. Then, with her sister, she recruited him to join the conspiracy to "take down Dr. York". He said no to the offers. And it is not true that the state couldn't do anything after Lopez was granted federal immunity. She had not been given state immunity. The state could have charged her in the Superior Court of Putnam County with statutory rape. And it is also not true that Williams could be prosecuted for

14

having sex with Lopez. He was fifteen years old, under the age to consent to have sex.

The newly discovered evidence undermines the validity of the prosecution's case, specifically: The applicant's conviction and sentence were based on a fundamentally unfair trial, given that the new evidence shows that no reasonable factfinder would have convicted him beyond a reasonable doubt had this evidence been presented. This failure undermines confidence in the trial's outcome, as it likely would have changed the result.

It is a fundamental miscarriage of justice where the jury did not hear testimony that Nicole Lopez was able to supply alcohol to Williams before raping him, because on numerous occasions, she broke into the applicant's home and stole his alcohol. The fact that Dr. York was not home proves that he did not live in Putnam County but instead lived in Athens, Clarke County, Georgia. Nicole can break into his house and steal his liquor to supply Williams. Nor did the jury hear how, in part, the conspiracy started and its motive. The fundamental miscarriage of justice results where the government grants Lopez immunity for statutory rape, whereas Dr. York is convicted and sentence to one thousand, six hundred and twenty months, and he is actually innocent.

The applicant's Sixth Amendment right to a fair trial and to confront the witnesses against him was violated when law enforcement, agents of the government,

intimidated and threatened Williams into silence and prevented him from testifying on his behalf. The applicant's Fifth Amendment due process right was also violated when law enforcement intimidated and threatened Williams into silence and prevented him from testifying on his own behalf.

The newly discovered evidence was not available at the time of trial or during the applicant's initial §2255 motion and could not have been discovered earlier through the exercise of due diligence, thanks to the government's conduct. This evidence would have created a reasonable probability of a different outcome at trial if presented to the jury. The new evidence, taken together with the record, would establish the applicant's factual innocence. The new evidence, taken together with the record, would demonstrate that a miscarriage of justice has occurred.

The applicant now seeks an order authorizing the district court to consider a second or successive §2255 motion based on newly discovered evidence, according to 28 U.S.C. § 2255(h)(1).

## VI. CONCLUSION

Where government agents interfere with a defendant's access to material and favorable testimony by threatening a defense witness, such conduct violates the defendant's constitutional right to a fair trial and due process. The Eleventh Circuit has recognized that such interference must be evaluated carefully and related cases.

Because law enforcement threats caused a key defense witness to remain silent, the applicant's conviction cannot stand.

Accordingly, the applicant respectfully requests that this Court grant leave to file a successive petition under 28 U.S.C. §2255(h)(1), based on newly discovered evidence of government misconduct that renders the verdict unreliable and the trial fundamentally unfair.

This is the 8th day of May, 2025.

Respectfully submitted,

MALACHI Z. YORK,
MISNOMER DWIGHT D. YORK

By:

s/ Imhotep Alkebu-lan
Imhotep Alkebu-lan GA Bar #602826

P.O. 54863
Atlanta, GA 30308
404-855-4646 Telephone
404-254-0701 Telecopier
ialkebulan@aol.com

ATTORNEY FOR APPLICANT

17

<u>Certificate of Service</u>

This is to certify that on the below date a true and correct copy of the foregoing was

mailed first class, postage prepaid, to the office of the following individual(s):

> Richard Moultrie
> AUSA
> P.O. Box 1702
> Macon, GA 31202

This is the 8th day of May 2025.

> s/ Imhotep Alkebu-lan
> Imhotep Alkebu-lan

18